UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  0:11-CV-61991-WPD

ARMOUR GROUP, INC., a Florida
corporation,

    Plaintiff,

vs.

JOSEPH LABOCK, A/KA/ YOSEF LABOCK,
SHARON MIZRACHI, and MOSHE MIZRACHI,
husband and wife, YL TECHNOLOGY, INC.,
a Florida corporation, and MILITARY STEEL
CORP., a Colorado corporation,

    Defendants.
_____/

### PLAINTIFF'S, ARMOUR GROUP, INC., MOTION FOR DEFAULT JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

    Plaintiff, Armour Group, Inc. ("Armour Group"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 55(b), hereby moves this Honorable Court for the entry of a Default Judgment against Defendants, Joseph Labock a/k/a Yosef Labock, YL Technology, Inc., and Military Steel Corp., (collectively, "Defendants") and as grounds therefore would state:

### INTRODUCTION

    In the present case, Defendants, all of whom have defaulted, have infringed on Armour Group's valuable rights in a patent, trademarks, and trade secrets.  Quite simply, Defendants have been advertising, selling, promoting, and offering for sale counterfeit products using Armour Group's patented designs, trademarks, and trade secrets.  Accordingly, Armour Group is entitled to an award of damages and attorneys fees as well as injunctive relief.

## FACTUAL BACKGROUND

### Plaintiff's Ownership of the Intellectual Property and
### Other Assets at Issue in This Lawsuit

Plaintiff owns United States Patent Number 7,318,956 B2 entitled *One Way Bullet-Resistant Transparent Panel* (the "'**956 Patent**"), the ONEWAY trademark for bullet resistant glass windows for vehicles and buildings, including United States Trademark Registration 3,067,530 for the trademark ONEWAY for bullet resistant glass windows for vehicles and buildings (the "**ONEWAY Trademark**"), and the Rhino Design trademark for armored vehicles (the **"Rhino Design Trademark"**).  (*See* **Aff. Ex. A – "'956 Patent," Aff. Ex. B – "ONEWAY Trademark Registration," and Aff. Ex. C – "Rhino Design Trademark"**).  Plaintiff also owns the designs for its armored vehicles.

Defendant Labock is the inventor of the '956 Patent.  Defendant Labock assigned his rights to the '956 Patent to Labock Technologies, Inc. ("**Labock Technologies**") in 2005.  Advanced Blast Protection, Inc. (**"Advanced Blast"**) acquired all of the assets of Labock Technologies, including the '956 Patent, from certain creditors of Labock Technologies (the "**Labock Creditors**") following foreclosure by the Labock Creditors of a lien and security interest in the assets of Labock Technologies under the Uniform Commercial Code of the State of Florida, in 2008 (the "**UCC Foreclosure**").  Plaintiff acquired all of the assets of Advanced Blast, including the '956 Patent, pursuant to an Asset Purchase Agreement dated March 23, 2010 (the "**Asset Purchase Agreement**").

The '956 Patent was assigned from Advanced Blast Protection to Plaintiff on May 18, 2010, and the assignment was recorded at Reel 024456 and Frame 0503 in the United States Patent and Trademark Office on May 28, 2010.  The '956 Patent issued on January 15, 2008.  The '956 Patent is prima facie evidence of the validity of the patent and Plaintiff's exclusive right to exclude others from using the claimed subject matter.

### Plaintiff's ONEWAY Trademark and Rhino Design Trademark

Labock Technologies filed a federal application in 2004 and obtained a federal registration for the ONEWAY Trademark in 2006.  Plaintiff's ONEWAY Trademark was first used at least as early as December 31, 2001.  Advanced Blast acquired the ONEWAY Trademark from the Labock Creditors in 2008 following its acquisition by the Labock Creditors

pursuant to the UCC Foreclosure. Plaintiff acquired all of the assets of Advanced Blast, including the ONEWAY Trademark, pursuant to the Advanced Blast-Armour Group Asset Purchase Agreement dated March 23, 2010. The ONEWAY Trademark was assigned from Advanced Blast to Plaintiff on May 18, 2010, and the assignment was recorded at Reel 4215 and Frame 0637 in the United States Patent and Trademark Office on June 1, 2010. The ONEWAY Trademark was assigned to Plaintiff with the goodwill of the business symbolized by the mark.

Plaintiff has established extremely valuable goodwill in the ONEWAY Trademark by virtue of sales of bullet resistant glass windows for vehicles and buildings under the mark and promotional and advertising expenditures devoted to such products. The ONEWAY Trademark is well known in the security product industry and an extremely valuable asset of Plaintiff in view of the sales of ONEWAY bullet resistant glass windows for vehicles and buildings and the promotional and advertising expenditures of products under the mark. United States Trademark Registration 3,067,530 is prima facie evidence of the validity of the ONEWAY trademark and registration, and Plaintiff's exclusive right to use the mark in commerce. Plaintiff's ONEWAY Trademark was used well before Defendants' unauthorized use of the mark.

Labock Technologies first used the Rhino Design Trademark for armored vehicles at least as early as 2003. Advanced Blast acquired the Rhino Design Trademark from the Labock Creditors in 2008 following its acquisition by the Labock Creditors pursuant to the UCC Foreclosure. Plaintiff acquired all of the assets of Advanced Blast, including the Rhino Design Trademark, pursuant to the Advanced Blast-Armour Group Asset Purchase Agreement dated March 23, 2010. Plaintiff has established extremely valuable goodwill in the Rhino Design Trademark by virtue of sales of armored vehicles under the mark and promotional and advertising expenditures devoted to such products. The Rhino Design Trademark is well known in the security product industry and an extremely valuable asset of Plaintiff in view of the sales of armored vehicles sold under its RHINO trademarks and the promotional and advertising expenditures of products under the mark  Plaintiff's Rhino Design Trademark was used well before Defendants' unauthorized use of the mark.

### **Plaintiff's Armored Vehicles Design Trade Secrets**

The assets acquired by Plaintiff through the UCC Foreclosure and the Advanced Blast-Armour Group Asset Purchase Agreement included all of the designs for Plaintiff's armored

3

vehicles sold under Plaintiff's RHINO trademarks (the **"Armored Vehicle Designs"**). Plaintiff's Armored Vehicle Designs derive independent economic value from not being generally known to others. Plaintiff's Armored Vehicle Designs are the subject of reasonable efforts to maintain their secrecy. Defendants used Plaintiff's Armored Vehicle Designs despite having a duty to maintain their secrecy arising from, among other things, the UCC Foreclosure and the Advanced Blast-Armour Group Asset Purchase Agreement.

### Defendants' Challenge to Plaintiff's Rights

Defendant Labock filed an Objection to the Sale of the Assets of Advanced Blast in bankruptcy proceedings before the United States Bankruptcy Court, Southern District of Florida, Fort Lauderdale Division, Case No. 09-34185 JKO (the **"Bankruptcy Court"**), on January 28, 2010. Defendant Labock alleged that Advanced Blast was not the true owner of the '956 Patent and the ONEWAY Trademark because of a defective assignment of the '956 Patent and the ONEWAY Trademark to Labock Technologies. The Bankruptcy Court denied Defendant Labock's Objection to the Sale of the Assets of Advanced Blast on February 12, 2010. In its Order, the Bankruptcy Court ruled: "Joseph Labock has no interest in any of the Patent, Trademarks or Tradenames, or any other intellectual property of the Debtor; including but not limited to U.S. Patent No. 7,318,956 B2 issued January 15, 2008, and the following U.S. Trademark applications or registrations: "Rhinoraptor," Application Serial Number 78/471,977; "Rhinopak" Reg. Number 3001921; "Rhinorunner," Reg. Number 3067586 and "Oneway," Reg. Number 3067530 (collectively, "IP"). The Debtor is the sole owner of all IP and other assets pursuant to the Asset Purchase Agreement dated February 26, 2008 with the Debtor as Buyer and Joseph Gunnar & Co., LLC, as the Seller and the Asset Purchase Agreement dated February 28, 2008 with the Debtor as the buyer and JHNC, Inc as the agent for the Arpo Note Holders; as more particularly described in the Notice of Filing." The Bankruptcy Court further ruled: "Advanced Blast Protection, Inc., a Florida corporation, is the owner of the IP by virtue of assignment from Labock Technologies, Inc., a Florida corporation. Should Joseph Labock pursue any further rights to Debtor's IP, he will be liable for all attorneys fees and costs incurred by Debtor in defending that action."

**Defendants' Wrongful Acts Regarding Plaintiff's '956 Patent**

Defendants Joseph Labock, Sharon Mizrachi, and Moshe Mizrachi are infringing or inducing others to infringe the '956 Patent. Defendants Joseph Labock, Sharon Mizrachi and Moshe Mizrachi are selling or offering, individually or through one or more entities owned and controlled by them, products that infringe the '956 Patent in Florida and elsewhere in the United States. Defendant Military Steel has contracted with Defendants Joseph Labock, Sharon Mizrachi, Moshe Mizrachi and/or entities owned by them to manufacture, sell, offer, or use products that infringe the '956 Patent in Florida and elsewhere in the United States. Defendant YL Technology manufactures, sells, offers, or uses products that infringe the '956 Patent in Florida and elsewhere in the United States.

Defendants' actions have not been authorized by Plaintiff. Defendants' actions have at all times relevant to this lawsuit been willful and intentional.

**Defendants' Wrongful Acts Regarding Plaintiff's ONEWAY Trademark and
the Rhino Design Trademark and False and Misleading Statements**

Defendant YL Technology's website contains a webpage selling, offering, advertising, or promoting "One-Way" bullet resistant windows and armored vehicles bearing the Rhino Design Trademark that are identical or substantially identical in design to those of Plaintiff. (*See* **Aff. Ex. D – "YL Technology Website"**) Defendant Military Steel's website contains a webpage selling, offering, advertising, or promoting "OneWay™" bullet resistant glass. (*See* **Exhibit E – "Military Steel Website"**) Defendant YL Technology's website and Military Steel's website contain links to *YouTube* videos of Defendant Labock, where he demonstrates "his" bullet resistant glass (the "**Labock Videos**"). (*See* **Aff. Ex. E – "Military Steel Website"**) Plaintiff owns all patent and trademark rights associated with the bullet resistant glass discussed in the Labock Videos.

Defendant Military Steel's website contains an October 24, 2010 announcement stating that "Military Steel partners with Israeli company to commercialize Bullet Resistant Glass, combat proven for military and civilian uses." (*See* **Aff. Ex. E – "Military Steel Website"**) Defendant Military Steel's Israeli partner is Defendant Labock. Plaintiff owns all patent and trademark rights associated with the bullet resistant glass discussed in this announcement. Defendants' use of the ONEWAY Trademark and the Rhino Design Trademark has not been

5

authorized by Plaintiff. The Labock Videos and the statements on Military Steel's website concerning the commercialization of bullet resistant glass are false or misleading. On or about August 30, 2011, Plaintiff sent a letter to Defendant Military Steel alleging patent and trademark infringement. Defendants have not ceased violating Plaintiff's rights despite Plaintiff's objections. Defendants' actions have at all times relevant to this lawsuit been willful and intentional.

### Defendant's Wrongful Acts Regarding Plaintiff's Trade Secrets

Defendants have used Plaintiff's designs to manufacture, sell, offer, or use armored vehicles in Florida and elsewhere in the United States that are identical or substantially identical in design to Plaintiff's armored vehicles sold under its RHINO trademarks. Defendants' actions have not been authorized by Plaintiff. Defendants' actions have at all times relevant to this lawsuit been willful and intentional.

### STANDARD FOR DEFAULT JUDGMENT

Upon the entry of a default, all of the factual allegations in the complaint are taken as true. See Enpat, Inc. v. Budnic, 773 F. Supp. 2d 1311 (M.D. Fla. 2011). Further,

> Fed.R.Civ.P. 55(b)(2) authorizes a court to enter a default judgment against a properly served defendant who, like Defendant here, fails to file a timely responsive pleading. By defaulting, all of Plaintiffs' well-pled allegations in their Complaint are deemed admitted. See Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987); Petmed Express, Inc. v. Medpets.com, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004). If the admitted facts in the Compliant establish liability, then the Court must determine appropriate damages. Where all the essential evidence is of record, an evidentiary hearing on damages is not required, especially when, as here, Plaintiffs seek statutory damages.

UMG Recordings, Inc. v. Roque, No. 08-21259-CIV, 2008 WL 2844022 (S.D. Fla. July 23, 2008) (footnote omitted).

### ARGUMENT

For the reasons expressed in greater detail below, Armour Group is entitled to a default judgment on all counts of the Complaint, an award of damages in the amount of no less than $4,000,000.00 and its reasonable attorneys' fees, and a permanent injunction against Defendants'

6

continued use of the '956 Patent, the ONEWAY Trademark, the Rhino Design Trademark, and the Armored Vehicle Designs.

> I. **Defendants have infringed the '956 Patent.**

Defendants' products infringe Armour Group's '956 Patent.

> Infringement analysis is a two-step process: First, the court determines the scope and meaning of the patent claims asserted ... [and secondly,] the properly construed claims are compared to the allegedly infringing device. Step one, claim construction, is a question of law . . . . Step two, comparison of the claims to the accused device, is a question of fact and requires a determination that every claim limitation or its equivalent be found in the accused device.

North American Container, Inc. v. Plastipak Packaging, Inc., 415 F.3d 1335 (Fed. Cir. 2005) (citations and quotation marks omitted).

The meaning of the patent claims asserted in this case is rather simple. Quite simply, Plaintiff owns a patent for one-way bullet resistant glass. That is, glass which bullet-resistant on the on one side of the glass panel, but allows for bullets to pierce the glass from the other side of the panel. Claim 1 of the '956 Patent is directed to the use and manufacture of the one-way bullet-resistant glass and states, in relevant part: "A transparent panel effective for … preventing a penetration of the bullet through the transparent panel when fired at said first side, but allowing a penetration of a further bullet through the transparent panel when fired at said second side." Claim 2 through 9 of the '956 Patent are dependent on Claim 1. Claims 10-27 provide the makeup of the bullet-resistant glass panel.

The second part of the infringement inquiry also calls for a simple comparison and determination. As pointed out in the Complaint, Defendants are selling infringing one-way bullet resistant glass. A simple comparison of the patent claim and the product descriptions on Defendants' own websites reveals that Defendants are selling glass with the same patented function. As reflected on the YL Technology Website, Defendants purportedly offer the following for sale:

> Labock's newest invention: "THE RETURN FIRE GLASS". This revolutionary bullet proof glass is a patented technology. The newest bullet proof glass in the market which designed to stop bullets from entering the vehicle or structure while allowing return fire to pass through the glass from the interior of the vehicle or structure.

On another page on the YL Technology Website, it is also stated:

> This glass will resist incoming small arms fire striking the outside of the glass, but will allow those on the other side of the glass, such as guards firing from inside the armored car, to fire through the glass at the exterior threat.

Further, the YL Technology website also offers an armored vehicle for sale, an "R Armored Vehicle Mercedes Vario D-814," which includes one-way bullet resistant glass as a component, stating:

> Besides the traditional gun ports, it is equipped with Labock's *Type NIJ – III* return fire glass bullet resistant glass, allowing the crew to respond to hostile fire from the safe interior of the vehicle through the windshield in case of need.

The YL Techonology website further emphasizes that "UNIQUE FEATURES" of the armored vehicle include the "One-Way bullet resistant windows (more protection, survavility [sic], and tactical options + highest transparency and no distortion."

Similarly, Military Steel Wesbite also offers infringing products for sale. That is, Military Steel offers for sale "Bullet Resistant Glass, which enables active defense – allowing return fire through the glass!" Further, as the Military Steel website states the following as one of the "Product Advantages" of the glass: "OneWay$^{TM}$ glass enables active defense allowing return fire through the glass." Additionally, the Military Steel website contains embedded YouTube videos of Labock demonstrating "his" bullet resistant glass.

As a comparison of product descriptions on Defendants' own websites describe the patented features of the one-way bullet resistant glass that is the subject of the '956 Patent, there is no question that Defendants have infringed on the '956 Patent. Accordingly, Armour Group is entitled to a default judgment on Count I of the Complaint for patent infringement.

## II.     **Defendants have infringed the ONEWAY Trademark and the Rhino Design Trademark.**

Title 15 U.S.C. § 1114 provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." To prove its claim for trademark infringement, Armour Group must demonstrate (1) ownership of the marks at issue; (2) Defendants' use of the marks is without authorization from Armour Group; and (3) Defendants' use is likely to cause confusion, mistake, or deception as to the source, affiliation, or sponsorship of Defendants' goods. See Babbit Electronics, Inc. v.

8

Dynascan Corp., 38 F.3d 1161, 1178 (11th Cir. 1994); Dieter v. B&H Industries of Southwest Florida, 880 F.2d 322, 326 (11th Cir. 1989), cert. denied, 498 U.S. 950 (1990).

The first two elements of Armour Group's trademark infringement claim are easily met. Armour Group is the sole owner of the ONEWAY Trademark, which is a registered, valid, and thus protectable mark. Moreover, Defendants do not have, nor have they ever had, the right or authority to use the ONEWAY Trademark on Defendants' goods. In fact, as pointed out above, the Bankruptcy Court has specifically found that Labock has no rights to the ONEWAY Trademark and admonished Labock from pursuing his claims any further.

With regard to the third element of Armour Group's trademark infringement claim—likelihood of confusion—this Circuit uses a seven-factor test. See Ross Bicycles, Inc. v. Cycles USA, Inc., 765 F.2d 1502, 1506 (11th Cir. 1985). These factors, as outlined in Safeway Store, Inc. v. Safeway Discount Drugs, Inc., are: (a) the strength of the mark; (b) the similarity of marks; (c) the similarity of the goods; (d) similarity of the sales methods; (e) the similarity of advertising media; (f) defendants' intent; and (g) evidence of actual confusion. 675 F.2d 1160, 1164 (11th Cir. 1982); see also Lipscher v. LRP Publ'ns, Inc., 266 F.3d 1305, 1303 (11th Cir. 1997). As demonstrated above, Defendants, through the representations made on their websites, have deliberately caused consumer confusion due to their blatant use of Armour Group's ONEWAY Trademark on their websites, Labock's name as the inventor of Defendants' one-way bullet resistant glass, and product descriptions and imagery resembling the utility and appearance of Plaintiffs' ONEWAY bullet resistant glass. As Defendants have gone out of their way to confuse customers as to the source, affiliation, or sponsorship of Defendants' goods, Plaintiffs have established that there is a likelihood of consumer confusion due to Defendants' use of the ONEWAY Trademark. See Turner Greenberg Assocs. v. C & C Imps., 320 F. Supp. 2d 1317, 1332 (S.D. Fla. 2004) ("The likelihood of confusion is greater when an infringer uses the exact trademark.").

Accordingly, as Armour Group owns the ONEWAY Trademark, has not authorized Defendants to use the ONEWAY Trademark, and Defendants have used the ONEWAY Trademark to cause consumer confusion, Armour Group is entitled to a default judgment on Count II of the Complaint for Trademark Infringement.

### III. Defendants have violated the Lanham Act creating consumer confusion as to the designation of origin of its products.

As with trademark infringement claims, the test for liability for false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a), is also whether the public is likely to be deceived or confused by the similarity of the marks at issue. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 780 (1992). Therefore, because Armour Group has established the merits of its trademark infringement claims against Defendants, it has also proven its false designation of origin claim pursuant to the Lanham Act and is entitled to a default judgment on Count III of the Complaint.

### IV. Defendants have violated the Lanham Act by making false and misleading representations of fact to customers and potential customers.

The Lanham Act creates liability for persons who make false and misleading representations of fact to customers and potential customers. Specifically, the Lanham Act provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B). That said, if a representation is literally false, a plaintiff need not present evidence of consumer deception. See Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1247 (11th Cir. 2002).

In order to prevail on a claim for false and misleading statements pursuant to the Lanham Act, a plaintiff must establish the following:

> (1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the movant has been-or is likely to be-injured as a result of the false advertising.

As pointed out above, through their websites, Defendants advertised that the glass they were selling using the ONEWAY Trademark belonged to them and suggested that they have the right to commercialize and sell that product. Based on the '956 Patent and Armour Group's trademark

registrations, such representations were literally false, had the capacity to deceive consumers, had a material effect on purchasing decisions, affected interstate commerce, and have injured Armour Group. Quite simply, Defendants' blatant misrepresentations were designed to divert consumers from Armour Group (the true owner of the patented glass and marks) to Defendants. Accordingly, due to their false and misleading statements, Defendants have violated the Lanham Act and Armour Group is entitled to a default judgment on Count IV of the Complaint.

### V. Defendants are liable for common law trademark infringement and unfair competition.

"The legal standard for federal trademark and unfair competition, and for common law trademark infringement, are essentially the same." Monsanto Co. v. Campuzano, 206 F. Supp. 2d 1239, 1250 (S.D. Fla. 2002) (citing Tally–Ho, Inc. v. Coast Community College Dist., 889 F.2d 1018, 1023 (11th Cir. 1989)). As Armour Group has established the merits of its federal trademark infringement and unfair competition claims, it has also established the merits of its state law claims for same. See id. ("In light of my analysis of [the] federal claims, I conclude that [the plaintiff] has established the elements necessary to its common law unfair competition claim."). Accordingly, Armour Group is entitled to a default judgment on Count V of the Complaint.

### VI. Defendants have violated the Florida anti-dilution statute.

Pursuant to Florida Statutes section 495.151(a), Armour Group is entitled to an injunction "against another person's commercial use of a mark or trade name if such use begins after the mark has become famous and is likely to cause dilution of the distinctive quality of the famous mark . . . ." The legal standards under the federal and Florida antidilution statutes are the same. See Rain Bird Corp. v. Taylor, 665 F. Supp. 2d 1258, 1267 (N.D. Fla. 2009) (citing Great Southern Bank v. First Southern Bank, 625 So. 2d 463, 471 (Fla. 1993)).

Based on Defendants' default, Armour Group's well-plead allegations that the ONEWAY Trademark and Rhino Design Trademark are famous are deemed admitted. See Complaint [D.E. 1] at ¶¶ 28, 35. Further, as pointed out above, Defendants have used the ONEWAY Trademark and Rhino Design Trademark on their websites in the course of commerce. Defendants' use of Armour Group's famous trademarks is likely to cause dilution of

the distinctive quality of same because Defendants' unauthorized and counterfeit products do not originate with Armour Group, which has the exclusive right to sell and distribute one-way bullet resistant glass bearing the famous marks. As such, Defendants have violated Florida's anti-dilution statute and Armour Group is entitled to a default judgment on Count VI of the Complaint.

### VII. Defendants have misappropriated Armour Group's Armored Vehicle Designs trade secrets.

Armour Group's Armored Vehicle Designs constitute trade secrets and Defendants have misappropriated said trade secrets by selling armored vehicles using the Armored Vehicle Designs. The Florida Uniform Trade Secrets Act (FUTSA) defines a trade secret as:

> information, including a formula, pattern, compilation, program, device, method, technique, or process that:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Fla. Stat. § 688.002(4). Manufacturing drawings and engineering designs such as the Armored Vehicle Designs "easily qualify" as trade secrets. See Stoneworks Inc. v. Empire Marble and Granite Inc., 49 U.S.P.Q.2d 1760 (S.D. Fla. 2010).

> In order to state a claim for misappropriation of trade secrets, a plaintiff must allege:
>
> (1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy and (2) the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it.

Del Monte Fresh Produce Co. v. Dole Food Co., Inc., 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001) (citations omitted).

Here, due to Defendants' default, there is no question that the Armored Vehicle Designs were secret and that Armour Group took reasonable steps to protect the secrecy of the Armored Vehicle Designs. Similarly, there is no question that Defendants misappropriated the Armored Vehicle Designs in offering for sale the substantially identical armored vehicles depicted on

12

Defendants' websites. Accordingly, Armour Group is entitled to a default judgment on Count VII of the Complaint.

### VIII. Armour Group is entitled to damages on all counts of the Complaint.

#### a. Armour Group is entitled to statutory damages for Defendants' violations of the Lanham Act and use of counterfeit marks.

In default judgment cases, statutory damages are "specially appropriate" due to infringer nondisclosure. PetMed Express, Inc. v. MedPets.Com, Inc., 336 F. Supp. 2d 1213, 1220 (S.D. Fla. 2004). Pursuant to 15 U.S.C. § 1117(c),

> In a case involving the use of a counterfeit mark … the plaintiff may elect … to recover … an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of--
>
> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

If a plaintiff establishes liability for federal trademark infringement, the plaintiff axiomatically also establishes the use of a counterfeit by the defendant. See PetMed Express, Inc., 336 F. Supp. 2d at 1220. Further, willful infringement may be inferred by virtue of a defendant's default. See Ordonez v. Icon Sky Holdings LLC, No. 10–60156–CIV, 2011 WL 3843890 (S.D. Fla. Aug. 30, 2011) (citing Arista Records, Inc. v. Beker Enters., 298 F. Supp. 2d 1310, 1313 (S.D.Fla. 2003)).

As pointed out above, Armour Group has conclusively established that Defendants infringed their federally registered trademarks. Additionally, by virtue of their default, Defendants have essentially admitted that their infringement was willful. That is, the simple facts that Defendants went so far as to post videos of Labock, the inventor of the ONEWAY bullet-resistant glass, demonstrating "his" bullet-resistant glass, to deceive consumers into believing that Defendants have the right to manufacture and sell ONEWAY bullet-resistant glass demonstrates that Defendants' use of the ONEWAY Trademark was willful. Similarly, Defendants' use of the Rhino Design Trademark in the advertising and sale of their armored vehicles was also willful. Accordingly, Armour Group is entitled to statutory damages in the

13

amount of $4,000,000.00 ($2,000,000.00 per counterfeit mark) for Defendants' use of counterfeit marks.

### b. **Armour Group is entitled to damages for Defendants' infringement of the '956 Patent.**

Pursuant to 35 U.S.C. § 284:

Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

While there should be no doubt that Armour Group is entitled to damages on its claim for patent infringement, due to Defendants' default and Armour Group's resulting inability to conduct discovery, Armour Group is unable to provide the Court with an amount of compensable damages for its patent infringement claim. Accordingly, until such time as Armour Group is able to obtain information to ascertain its damages, Armour Group respectfully reserves the right to request an award of damages on its patent infringement claim.

### c. **Armour Group is entitled to damages for Defendants' misapprorpriation of trade secrets.**

Pursuant to section 688.004, Florida Statutes:

(1) Except to the extent that a material and prejudicial change of position prior to acquiring knowledge or reason to know of misappropriation renders a monetary recovery inequitable, a complainant is entitled to recover damages for misappropriation. Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret.

(2) If willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subsection (1).

While there should be no doubt that Armour Group is entitled to damages on its claim for misappropriation of trade secrets, due to Defendants' default and Armour Group's resulting inability to conduct discovery, Armour Group is unable to provide the Court with an amount of

compensable damages for its claim of misappropriation of trade secrets. Accordingly, until such time as Armour Group is able to obtain information to ascertain its damages, Armour Group respectfully reserves the right to request an award of damages on its claim of misappropriation of trade secrets.

### d. Armour Group is entitled to an award of attorneys' fees

The Court has discretion to award Armour Group its attorneys' fees on every claim made in this case. See 35 U.S.C. § 285 (patent infringement); 15 U.S.C. § 1117(a) (Lanham Act); Fla. Stat. § 495.141(1) (Florida trademark law), 688.005 (Florida Uniform Trade Secrets Act). Further, as noted above, an award of attorneys' fees against Labock is mandated by the Bankruptcy Court's order. Due to the exceptional nature of this case, i.e., Defendants' willful and malicious actions in infringing Armour Group's patent and trademarks, Defendants' misappropriation of Armour Group's trade secrets, Defendants' appearance and then default, the Court should exercise its discretion to award Armour Group its attorneys' fees as to all Defendants.

### IX. Armour Group is entitled to a permanent injunction on all counts of the Complaint.

"Courts also regularly issue injunctions as part of default judgments." Arista Records, Inc. v. Beker Enterprises, Inc., 298 F. Supp. 2d 1310, 1314 (S.D. Fla. 2003). To receive a permanent injunction, Armour Group must demonstrate that (1) it has suffered an irreparable injury; (2) remedies at law are inadequate to compensate for that injury; (3) considering the balance of hardships between Armour Group and Defendants, a remedy in equity is warranted, and (4) the public interest would not be disserved by a permanent injunction. Ebay Inc., v. Mercexchange, L. L. C., 547 U.S. 388, 391 (2006). Further, even where defendants may have discontinued infringement due to the pendency of litigation, a court appropriately issues a permanent injunction to prevent the defendants from resuming their infringement. See PetMed Express, Inc., 336 F. Supp. 2d at 1223.

These principles apply equally to cases brought under the Patent Act or the Lanham Act. See North American Medical Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1228 (11th Cir. 2008).

### a. **Armour Group is entitled to a permanent injunction enjoining Defendants' use of the '956 Patent.**

For the reasons explained more fully below, Defendants should be permanently enjoined from their continued use of the '956 Patent.

#### i. **Armour Group has been irreparably injured by Defendants' use of the '956 Patent.**

The Federal Circuit has repeatedly held that threatened loss of market share and goodwill supports a finding of irreparable harm in patent cases. For example, the Federal Circuit recently affirmed a preliminary injunction, agreeing with the district court that the availability of damages and the fact that other competitors were already in the market "do not negate" the irreparable harm from lost market share that would ensue absent a preliminary injunction. Abbott Labs, 544 F.3d at 1361-62.  The Federal Circuit relied on its prior holding that "loss of revenue, goodwill, and research and development support constitute irreparable harm." Id. (citing Bio-Technology Gen. Corp. v. Genentech, Inc., 80 F.3d 1553, 1566 (Fed. Cir. 1996)).

The Federal Circuit also recently affirmed a preliminary injunction that was based, in part, on the finding that sale of infringing products would cause "incalculable harm to [the patent holder's] goodwill." AstraZeneca, 633 F.3d at 1063; see also Nanoexa Corp. v. Univ. of Chicago, No. 10-CV-2631-LHK, 2010 WL 3398532, at *4 (N.D. Cal. Aug. 27, 2010) (noting in a patent licensing dispute that "intangible injuries such as damage to reputation, advertising efforts, or goodwill may constitute irreparable harm"); Reebok Int'l Ltd. v. J. Baker, Inc., 32 F.3d 1552, 1558 (Fed. Cir. 1994) ("Harm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure").

Here, the allegations of the Complaint establish that Armour Group's market share and goodwill are threatened by Defendants' use of the '956 Patent and the sale of products using the one-way bullet-resistant glass.  Accordingly, Armour Group has been irreparably injured by Defendants' use of the '956 Patent.

### ii. Armour Group has no adequate remedy at law to compensate it for Defendants' use of the '956 Patent.

Armour Group has no adequate remedy at law because money damages alone likely would not adequately compensate Armour Group for the irreparable harm caused by Defendants' infringement of the '956 Patent. Armour Group faces future loss of market share of its bullet-resistant glass as a result of Defendants' continued infringement. Such future loss is not compensable by damages. See Sensormatic Electronics Corp. v. TAG Co. US, LLC, 632 F. Supp. 2d 1147 (S.D. Fla. 2008).

### iii. The balance of the hardships greatly favors Armour Group.

The substantial and irreparable harm that Armour Group is suffering and will continue to suffer without immediate injunctive relief far outweighs any potential harm to Defendants, which deliberately continues to infringe Armour Group's '956 Patent. The fact that Defendants might have to expend resources or suffer inconvenience to design their own products and to remove their infringing functionality is a consequence of Defendants' decision to copy Armour Group's patented designs and products; it does not weigh against entry of an injunction. Under these circumstances, Defendants cannot now fairly claim that they would suffer economic harm if restrained. See, e.g., Telebrands Direct Response Corp., 802 F. Supp. at 1179 (balance of equities favors injunction, since "[o]ne who elects to build a business on a product found to infringe cannot be heard to complaint if an injunction against a continuing infringement destroys the business so elected").

### iv. A permanent injunction would serve the public interest.

A permanent injunction is necessary not only to protect Armour Group's rights, but also to protect the public interest. Because Armour Group has demonstrated a likelihood of success on its claims, the public interest would be served by prohibiting Defendants from infringing Armour Group's patents. See, e.g., Fred Hutchinson Cancer Research Ctr., 2011 WL 1119563, at *8 (granting injunction and finding "there is a strong public interest in preserving the rights of patent holders"). As one court noted in enjoining infringement of a patent:

> No public interest is served by allowing patent infringement. While this Court certainly favors vigorous competition in the marketplace, it also recognizes the importance of rewarding inventors for their creative genius and protecting their

intellectual property rights from infringers. Rather than stifle competition, such protection encourages the innovation that leads to new products.

Telebrands Direct Response Corp., 802 F. Supp. at 1179.

### b. Armour Group is entitled to a permanent injunction enjoining Defendants' use of the ONEWAY Trademark and the Rhino Design Trademark.

In ordinary trademark infringement cases, such as this one, "complete injunctions against the infringing party are the order of the day." See SunAmerica Corp. v. Sun Life Assur. Co. of Canada, 77 F.3d 1325, 1336 (11th Cir. 1996). For the reasons explained more fully below, Defendants should be permanently enjoined from their continued use of the ONEWAY Trademark and the Rhino Design Trademark.

#### i. Armour Group has been irreparably injured by Defendants use of the ONEWAY Trademark and Rhino Design Trademark and has no adequate remedy at law.

As set forth above, Armour Group has established that Defendants have violated the Lanham Act. Accordingly, "[b]y virtue of [Defendants'] trademark infringement, [Armour Group has] also established irreparable harm and no adequate remedy at law" and is entitled to the issuance of a permanent injunction on its Lanham Act claims. See Perry Ellis Intern., Inc. v. URI Corp., No. 06-22020-CIV, 2007 WL 3047143 at *7 (S.D. Fla. Oct. 18 2007).[1]

---

[1] That said, there is some confusion as to whether the foregoing rebuttable presumption still applies in case brought under the Lanham Act. See Axiom Worldwide, Inc., 522 F.3d at 1228 ("we decline to decide whether the district court was correct in its holding that the nature of the trademark infringement gives rise to a presumption of irreparable injury."). However, two cases from this District have acknowledged that despite the cautionary language in Axiom Worldwide, Inc., a irreparable harm may still be presumed in trademark infringement cases. See Burger King Corp. v. Cabrera, No. 10–20480–CIV, 2010 WL 5834869 (S.D. Fla. Dec. 29, 2010) ("The panel's opinion in Axiom, however, acknowledged that under certain conditions a presumption of harm may be presumed in certain trademark infringement cases."); Miranda v. Guerrero, No. 08–22326–CIV, 2009 WL 1381250 (S.D. Fla. May 14, 2009).

Armour Group respectfully contends that, the presumption of harm is applicable to this case where defaults were entered against all Defendants and all well-plead allegations of the Complaint have been deemed admitted. However, even if the presumption of harm does not apply, Armour Group has established irreparable harm because:

> Without the entry of an injunction preventing [Defendants] from unauthorized use of the [ONEWAY Trademark and Rhino Design Trademark], [Armour Group] will lose its ability to control the nature and quality of the goods provided under its mark. There is no other adequate remedy to halt [Defendants'] sale of product bearing the [ONEWAY Trademark and Rhino Design Trademark] to unauthorized retailers and to halt [Defendants'] sale of product bearing the [ONEWAY Trademark and Rhino Design Trademark] which is not authorized.

See Perry Ellis Intern., Inc., 2007 WL 3047143 at *7.

### ii. **The balance of the hardships greatly favor Armour Group.**

The balance of hardships weighs in favor of Armour Group on its Lanham Act claims because Armour Group has acquired the ONEWAY Trademark and Rhino Design Trademark and the goodwill associated with same. Such goodwill associated with Armour Group's marks will be significantly eroded if Defendants are allowed to continue using Armour Group's marks. Given that Defendants are not authorized to use Armour Group's marks, no hardship will result to Defendants if they are required to discontinue use of same. Accordingly, the balance of hardships weighs in favor or Armour Group. See Tiramisu Intern. LLC v. Clever Imports LLC, 741 F. Supp. 2d 1279, 1287-88 (S.D. Fla. 2010) (using the same reasoning to find that balance of hardships favored plaintiff in a Lanham Act case).

### iii. **A permanent injunction would serve the public interest.**

The issuance of permanent injunctions in meritorious Lanham Act cases, such as this one, clearly serves the public interest. Quite simply, "the public deserves not to be led astray by the use of inevitably confusing marks." See Angel Flight of Georgia, Inc. v. Angel Flight America, Inc., 522 F.3d 1200, 1209 (11th Cir. 2008). Here, the use of Armour Group's marks on products not produced by Armour Group will lead to confusion in the marketplace and the public interest is best served by preventing Defendants from continuing to use the marks.

### c. **Armour Group is entitled to a permanent injunction enjoining Defendants' use of the Armored Vehicle Designs.**

In order to obtain a permanent injunction on Armour Group's claim for misappropriation of trade secrets, Armour Group "must demonstrate a clear legal right, the inadequacy of a remedy at law, and that an irreparable injury will occur if such relief is not granted." Sensormatic Electronics Corp., 632 F. Supp. 2d 1147, 1187 (S.D. Fla. 2008). As set forth above, Armour Group clearly has a legal right under FUTSA to prevent unauthorized disclosure and use of its trade secrets, the Armored Vehicle Designs. No adequate remedy at law exists to protect Armour Group from the erosion of its market share in the security industry. Finally, Armour Group faces irreparable injury if Defendants are not prevented from using Armour Group's Armored Vehicle Designs in that Armour Group will no longer be able to receive the market

benefit of its trade secrets absent an injunction. Accordingly, an injunction is appropriate here to enjoin Defendants' use of the Armored Vehicle Designs.

## CONCLUSION

As set forth above, Defendants, all of whom have defaulted, have infringed on Armour Group's valuable rights in a patent, trademarks, and trade secrets. Accordingly, Armour Group is entitled to an award of damages and attorneys fees as well as injunctive relief.

Respectfully submitted,

/s/ Laurence S. Litow
Laurence S. Litow, Esquire
Florida Bar No. 328758
Vijay G. Brijbasi, Esquire
Florida Bar No. 15037
**ROETZEL & ANDRESS, LPA**
350 Las Olas Blvd.
Las Olas Centre II, Suite 1150
Fort Lauderdale, FL  33301
Tel.:  (954) 462-4150
Fax:  (954) 462-4260
E-mail: lslitow@ralaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 7, 2011, I electronically filed the foregoing document with the Clerk of the Court using *CM/ECF*. I also certify that the foregoing is being served this day upon all counsel of record or *pro se* parties identified in the following Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by *CM/ECF* or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Laurence S. Litow
Laurence S. Litow
Fla. Bar No.: 328758

## SERVICE LIST

Ralph (Rick) Martin, Esq.
385 Main Street
Suite 200
Longmont, CO 80501